# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. 10-94 |
| v. : | |
| : | (J. Caldwell) |
| SHAWN CHAMBERS-GALIS : | |
| Defendant : | |

**INDICTMENT**

FILED
HARRISBURG, PA

MAR 24 2010

MARY E. D'ANDREA, CLERK
Per _____
     Deputy Clerk

**The Grand Jury Charges:**

## COUNT 1 - WIRE FRAUD
### 18 U.S.C. §1343

**I.   BACKGROUND**

1. At all times pertinent to this Indictment the defendant, SHAWN CHAMBERS-GALIS, was a Pennsylvania licensed real estate agent and a partner in a real estate closing and settlement business known as Donegal Settlement Services, Ltd (DSS). DSS was initially located in Jacobus, PA (York County), but on or about October of 2007 moved to Mt. Joy, PA.

2. CHAMBERS-GALIS held the position of "President" at DSS and was

the partner in charge of day-to-day operations. CHAMBERS-GALIS maintained possession and control of all DSS bank account statements and records.

3. DSS maintained a checking account at Susquehanna Bank (#7201). This account was known as the "operations" account and was used by DSS for its day to day expenses. CHAMBERS-GALIS and another DSS partner, one "SD," had unilateral signature authority on the operations account.

4. DSS also maintained two escrow accounts at the Susquehanna Bank. One of the accounts (#7202) was known as the "old" escrow account; the other (#0072) as the "new" escrow account. DSS employed both the old and the new escrow accounts to hold funds received from mortgage lenders for real estate closings and settlements. CHAMBERS-GALIS had unilateral signature authority on both the new and the old escrow accounts.

5. CHAMBERS-GALIS maintained personal checking accounts at the Union National Bank (#869120) and the ACCO York Federal Credit Union (#5002-02).

## II. THE SCHEME TO DEFRAUD

6. Between August of 2005 and January of 2008, in the Middle District of PA and elsewhere, the defendant,

**SHAWN CHAMBERS-GALIS**

did devise a scheme and artifice to defraud, and for obtaining money and property, by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing said scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writing, sign, signal, picture, or sound for the purpose of executing such scheme or artifice, to wit; in that CHAMBERS-GALIS devised and perpetrated a scheme to defraud her partners at DSS, mortgage lenders, and DSS customers through her diversion, embezzlement, and fraudulent conversion of approximately $273,580 in DSS escrow funds to her own use.

### III. MANNER AND MEANS OF THE SCHEME TO DEFRAUD

7. Between August of 2005 and November of 2006 CHAMBERS-GALIS diverted $75,446 from the old escrow account by issuing 18 old escrow account checks payable to DSS and depositing them into the operations account. These funds were available for diversion because a real estate settlement check drawn against the old escrow account for $105,242 in May of 2005 was never cashed by the payee, one "CP."

8. During this same time period CHAMBERS-GALIS issued, without the knowledge, authorization or consent of her partners, 37 checks totaling $71,904 against the operations account payable to CHAMBERS-GALIS or cash. Of this

amount, $63,081 was deposited into CHAMBERS-GALIS' personal checking account at the Union National Bank. Eight (8) of 37 checks bore the purported signature of SD. However, SD's signatures were forged by CHAMBERS-GALIS and the checks were issued without SD's knowledge, authorization or consent.

9. In June of 2006 CP realized he had never cashed the $105,242 check he received from DSS in May of 2005. Believing the check was too old to be negotiated, CP demanded a replacement check from DSS.

10. In order to conceal her embezzlement of the escrow funds, CHAMBERS-GALIS fabricated a false cover story, telling CP and one of her partners there were insufficient funds in the old escrow account to issue CP a replacement check because a former DSS employee had mistakenly paid a mortgage lender twice.

11. CHAMBERS-GALIS stalled CP and her partner with the bogus, double payment story for more than 8 months. Finally, after CP threatened to file a lawsuit, on March 22, 2007, CHAMBERS-GALIS gave CP a replacement check for $105,242 drawn against the old escrow account. In order to perpetuate her scheme CHAMBERS-GALIS told CP and her partner the payment was possible because the mortgage lender had finally issued DSS a refund.

12. In reality, in order to cover the payment of the replacement check, on March 22, 2007, CHAMBERS-GALIS diverted $273,580 from the *new* escrow

account and deposited these funds into the old escrow account. The $273,580 was sent to DSS by a mortgage lender for the specific purpose of paying off a mortgage on a residence owned by a DSS customer by the name of "BA."

13. Thereafter, between March of 2007 and August of 2007, CHAMBERS-GALIS diverted another $120,000 from the old escrow account to the operations account via a series of 12 transfers. Two of these transfers involved old escrow account checks bearing the forged signature of SD. CHAMBERS-GALIS then used these funds to write herself another 14 checks against the operations account totaling $69,286. SD's signature on 10 of the 14 operations account checks was forged by CHAMBERS-GALIS. All $69,286 was deposited into CHAMBERS-GALIS' personal checking account at Union National Bank.

14. Because CHAMBERS-GALIS no longer had sufficient funds in the new escrow account to pay off BA's mortgage, in order to perpetuate her scheme and shield it from discovery, CHAMBERS-GALIS began making monthly payments on BA's mortgage, sending $5,000 wire transfers from the old escrow account to the EMC Mortgage Company on March 30, 2007, April 30, 2007 and June 1, 2007.

15. In order to perpetuate her scheme to defraud and to conceal it from discovery, between January and November of 2007 CHAMBERS-GALIS returned a portion of the funds she embezzled, approximately $13,100, to DSS bank

accounts.

16. On or about September 1, 2007, CHAMBERS-GALIS paid off BA's mortgage by sending EMC a $263,388 check drawn against the new escrow account. The payment of this check was covered by escrow funds issued by other lenders for other mortgage pay-offs. As a result, 4 mortgages were not paid off by DSS as they should have been.

17. As a result of CHAMBERS-GALIS scheme, DSS went out of business in early 2008 and 4 claims were filed against DSS's title insurance carrier, Land American Title Guarantee, for mortgages that were not paid off as they should have been. As a consequence, Land America paid $258,000 in damages on these claims.

## IV. THE WIRE TRANSFER

18. On or about June 1, 2007, in furtherance of her scheme and artifice to defraud, CHAMBERS-GALIS did knowingly cause the sum of $5,000 to be sent by wire transfer from the Susquehanna Bank, Apple Hill Branch, 2290 South George Street, York, PA to the EMC Mortgage Corporation in Lewisville, Texas.

**All in violation of Title 18, United States Code, Section 1343.**

**The Grand Jury Further Charges:**

## COUNTS 2 thru 5 - UNLAWFUL MONETARY TRANSACTIONS
### 18 U.S.C. §1956(a)(1)

1. For purposes of Counts 2 thru 5, the information and allegations set forth in Count 1 are specifically incorporated herein.

2. On or about the following dates, in the Middle District of Pennsylvania and elsewhere, the defendant,

**SHAWN CHAMBERS-GALIS**

knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, did conduct, and did cause to be conducted, financial transactions that did, in fact, involve the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity knowing the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; to wit, Wire Fraud, as described in Count 1 of this Indictment, as set forth below:

| Count | Date | Financial Transaction |
|---|---|---|
| 2 | 10/31/06 | Deposit of $5,000 check drawn against Union National Bank Acct # 869120 payable to L.B. Smith Jaguar at the Fulton Bank, Carlisle Pike Branch, Mechanicsburg, PA |

| Count | Date | Financial Transaction |
|---|---|---|
| 3 | 3/17/07 | Deposit of $4,000 check drawn against Union National Bank Acct # 869120 payable to Shawn Chambers-Galis at the ACCO York Federal Credit Union in York, PA |
| 4 | 5/26/07 | Deposit of $5,000 check drawn against Union National Bank Acct # 869120 payable to one Z. Kinsley at the YTW Community Federal Credit Union in York, PA |
| 5 | 10/22/07 | Deposit of $2,708 check drawn against Union National Bank Acct # 869120 payable to Kagen Macdonald & France at the Farmer's First Bank, Whiteford Road Branch, York, PA |

**All in violation of Title 18, United States Code, Section 1956(a)(1).**



Date: 3-24-10